FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ SEP 0 8 2009
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

NATHANIEL GRAYTON,

                Petitioner,

— against —

ROBERT ERCOLE, Superintendent of
Green Haven Correctional Facility,

                Respondent.

------------------------------------------------------------------X

**MEMORANDUM and ORDER**

07-CV-0485 (SLT)

**TOWNES, United States District Judge:**

On January 17, 2003, *pro se* petitioner, Nathaniel Grayton ("Petitioner"), was convicted of murder in the second degree following a jury trial in New York State Supreme Court, Kings County. He was sentenced to an indeterminate term of imprisonment of twenty-five years to life. On December 23, 2006, Petitioner commenced this action seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

On April 24, 2006, the Court referred the matter to Magistrate Judge Roanne L. Mann to prepare and submit a Report and Recommendation ("R & R") containing findings of fact, conclusions of law, and a recommended disposition of the petition, pursuant to 28 U.S.C. § 636(b)(1). On August 13, 2007, Magistrate Judge Mann filed the R & R in which she recommended that Petitioner's petition for the writ of habeas corpus be denied. The Court granted Petitioner's motion for an extension of time to file objections to the R & R and, on December 19, 2007, Petitioner timely-filed objections to Magistrate Judge Mann's R & R. In a letter to the Court dated October 28, 2008, Petitioner submitted a supplemental objection to the R & R.

1

Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed *de novo* those portions of the R & R to which petitioner has objected. For the reasons set forth below, the Court accepts the R & R and denies the instant petition for the writ of habeas corpus.

## DISCUSSION

Under the framework established by Congress in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), this Court may only grant habeas relief if a state court judgment is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In this habeas petition, Petitioner objects to Judge Mann's conclusions that (1) Petitioner waived his right to be present at a hearing to determine whether he procured the unavailability of a witness through misconduct, (2) the state trial judge properly admitted the unavailable witness's grand jury testimony into evidence, and (3) statements made by the district attorney during opening remarks and summation did not violate his right to due process.

## I.    Defendant's Presence During *Geraci* Hearing

Petitioner contends that his exclusion from a so-called *Geraci* hearing deprived him of his constitutional right to be present at all material stages of trial. Under New York State law, a *Geraci* hearing is an evidentiary proceeding to determine whether "out-of-court statements, including Grand Jury testimony, may be admitted as direct evidence where the witness is unavailable to testify at trial and the proof establishes that the witness's unavailability was procured by misconduct on the part of the defendant." *People v. Geraci*, 85 N.Y.2d 359, 366

(1995); *see United States v. Mastrangelo*, 693 F.2d 269 (2d Cir. 1982) (describing the federal equivalent of the *Geraci* hearing).

During the trial, a seventeen-year-old witness to the murder, Jessica Osario, was produced in court pursuant to a material witness order. Tr. 312. Before the court but outside of the jury's presence, Osario stated that she refused to testify at Petitioner's trial. *Id*. at 324. Her court-appointed attorney explained that his client was "extremely frightened." *Id*. at 323. The trial judge found Osario in contempt and took her into custody. *Id*. at 328. The next day, while Petitioner was produced but not present in the courtroom, the district attorney applied for a *Geraci* hearing in order to show that Osario's unavailability was procured by Petitioner's actions. *Id*. at 355. The judge then conducted an evidentiary hearing where the People called several witnesses and introduced the district attorney's office threat assessment file. Petitioner's attorney participated in the *Geraci* hearing, but Petitioner again was not present. In a ruling from the bench in the presence of Petitioner, the trial judge held that Osario was intimidated by threats directed from Petitioner and that her grand jury testimony would be admitted into evidence. *Id*. at 509.

The Court now turns to whether Petitioner waived his right, if any exists, to be present at the *Geraci* hearing.[1]

---

[1]  As a threshold matter, the Court assumes familiarity with the facts of this case and adopts the R & R's factual findings as supported by the record, with the exception of one immaterial statement. The R & R states: "The day prior to the hearing, petitioner and his counsel were present when Osario was brought into court pursuant to a material witness order and when, out of fear, she refused to testify, even in the face of a contempt sanction and incarceration." R & R 11. From the record, it appears that Osario was already present in the courtroom on January 14, 2003, the day prior to the hearing, when Petitioner and his lawyer arrived at the courtroom and not vice versa. Tr. 320-23. On that day, the trial judge met with Osario, her appointed attorney, and the district attorney outside the presence of Petitioner, his defense counsel, and the jury to receive an *ex parte* application by Osario to seal the courtroom. *Id*. at 311-19. When the judge intended to rule on Osario's request for a sealed courtroom, the judge called for the Petitioner and his defense counsel to return because she could not "make a decision without bringing

### a.    Right to Be Present

It is a well-settled principle of constitutional law that a criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975). This stricture emanates from the Sixth Amendment Confrontation Clause and the Due Process Clause under the Fifth and Fourteenth Amendments. As the Supreme Court has recognized, "[t]he constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, . . . but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (internal citation omitted). Under the Fifth and Fourteenth Amendments, a criminal defendant's presence is required "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* (internal quotation marks omitted). Nevertheless, "the right to be present is not absolute: it is triggered only when the defendant's 'presence has a relation, reasonably substantial, to the ful[l]ness of his opportunity to defend against the charge.'" *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). Thus, no constitutional right to be present exists "when presence would be useless, or the benefit but a shadow." *Id.* (quoting *Synder*, 291 U.S. at 106-07). Moreover, "while a more expansive right to be present may apply under New York law, that broader right is not applicable in a federal habeas

---

[them] into th[e] courtroom." *Id.* at 319-20. It is clear Osario was present in the courtroom prior to Petitioner and his defense attorney's arrival as the judge and district attorney explicitly discussed where Osario should be seated when Petitioner entered the room. *Id.* at 321. When Petitioner and his counsel arrived in the courtroom, Osario changed her mind and refused to testify under any conditions, negating the need for the judge to rule on her application for a sealed courtroom. *Id.* at 325. Accordingly, the finding that "petitioner and his counsel were present when Osario was brought into the court" is not accurate. For the reasons discussed in the body of this opinion, such an error is immaterial.

proceeding where it does not implicate the rights of the defendant under the United States Constitution." *Kotler v. Woods*, 620 F. Supp. 2d 366, 383 (E.D.N.Y. 2009) (citing *Rios v. Artuz*, No. 07-CV-330, 2007 WL 1958899, at *9 n.4 (E.D.N.Y. June 29, 2007)).

In construing the scope of the right, New York and federal law both observe a "law-fact dichotomy." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). The New York Court of Appeals has held that pre-trial hearings where testimony is taken and questions of fact are to be determined are included in the definition of "trial," while "in the argument of a motion to decide a pure question of law, no right to be present inures to a defendant." *See People v. Anderson*, 16 N.Y.2d 282, 288 (N.Y. 1965). Under Federal Rule of Criminal Procedure 43, a defendant need not be present at "a conference or hearing upon a question of law." Fed. R. Crim. P. 43(c)(3). "If fact issues are presented, however, as they often will be on a pretrial motion to suppress evidence or on some motions for new trial, it would seem that defendant has a right to be present." *Clark*, 214 F.3d at 322 (citing 3A Charles Alan Wright, Federal Practice and Procedure § 721.1 at 12 (2d ed. 1982)). In *Clark*, the Second Circuit held that a petitioner's presence at a pre-trial *Wade* hearing clearly falls within the scope of the right. *Id.*; *see United States v. Wade*, 388 U.S. 218 (1967).

Along the "law-fact dichotomy," a *Geraci* hearing falls squarely on the factual side. *See Cotto v. Herbert*, 331 F.3d 217, 232 (2d Cir. 2003) (reviewing a similar hearing as a question of fact). The purpose of the hearing was to determine whether Osario's refusal to testify was based on threats emanating from Petitioner. Petitioner's absence from the hearing stirs Confrontation Clause and Due Process concerns as the hearing dictated Petitioner's cross-examination rights and precluded him from personally defending against accusations of misconduct.

5

Ultimately, it is an open question, at least on the Circuit level, whether a petitioner's absence during the course of a *Geraci* hearing is an adequate ground upon which a federal court may grant a writ of habeas corpus. The Court is aware of at least one federal district court in this Circuit answering this question in the affirmative. In *Perkins v. Herbert*, 537 F. Supp. 2d 481, 487 (W.D.N.Y. 2008), the petitioner, his counsel, and the prosecution were excluded from a *Sirois* hearing,[2] which was conducted *in camera* between the trial judge and the witness over defense counsel's objection. Defense counsel was permitted to submit questions to ask the witness, but the trial judge declined to allow defense in chambers or provide defense with an actual transcript of the hearing. *Id.* The habeas court found that the petitioner or at least his defense counsel could have assisted in the examination during the hearing as he had knowledge concerning the facts and the circumstances to which the witness was testifying. *Id.* at 500. Indeed, the petitioner in *Perkins* could have pointed out errors or falsities in a witness's testimony or rebutted accusations made against him. The habeas court ruled that the "exclu[sion of] both the defendant and defense counsel from [the witness's] examination at the *Sirois* hearing . . . was a misguided and unjustified infringement of [the petitioner's] Sixth Amendment and Due Process rights." *Id.* The habeas court found this error not harmless and granted the petitioner's writ. *Id.* at 505-06.

No other district court case in this Circuit directly contradicts the *Perkins* decision; nevertheless, several analogous cases may at least cast some doubt on *Perkins'* rationale. In the context of a petitioner's absence from a *Sandoval* hearing, district courts in this Circuit have found no cognizable basis for habeas relief. Under New York law, a *Sandoval* hearing "is to provide the defendant with an advance ruling on whether the People will be permitted to cross-

---

[2] In New York State jurisprudence, the *Geraci* proceeding was previously referred to as a *Sirois* hearing and the terms are interchangeable. *See People v. Straker*, 662 N.Y.S.2d 166, 166 (N.Y. Sup. Ct. 1997); *Matter of Holtzman v. Hellenbrand*, 460 N.Y.S.2d 591 (N.Y. App. Div. 1983).

examine him or her about particular criminal (charged or uncharged), vicious, or immoral conduct for the purpose of impeaching credibility should he or she testify at trial." *People v. Morales*, 764 N.Y.S.2d 104, 106 (N.Y. App. Div. 2003). Under New York law, the defendant has a statutory right to be present during the *Sandoval* hearing. *Id.* Similar to a *Geraci* hearing, at a *Sandoval* hearing, the defendant is in the "best position to point out errors in the [criminal history] report, to controvert assertions by the prosecutor with respect to uncharged acts and to provide counsel with details about the underlying facts of both charged and uncharged acts." *People v. Dokes*, 79 N.Y.2d 656, 661 (N.Y. Ct. App. 1992). Nevertheless, federal courts have denied habeas relief where state courts have failed to ensure the defendant's presence at this hearing. "Though a defendant has an absolute right under New York law to be present at a *Sandoval* . . . hearing, that right does not derive from federal constitutional principles. And, it is well established that federal courts reviewing habeas corpus petitions may only overturn convictions obtained in violation of the federal Constitution." *Williams v. McCoy*, 7 F. Supp. 2d 214, 220 (E.D.N.Y. 1998) (internal citation omitted); *see, e.g., Brown v. Conway*, No. 05-CV-839, 2009 WL 604906, at *4 (W.D.N.Y. Mar. 9, 2009); *Alvarado v. Burge*, No. 05-CV-1851, 2006 WL 1840020, at *3 (S.D.N.Y. June 30, 2006); *Curry v. Burge*, No. 03-CV-901, 2004 WL 2601681, at *11-13 (S.D.N.Y. Nov. 17, 2004), *overruled in part on other grounds*, unpublished mandate, (2d Cir. Mar. 7, 2007); *Jones v. Artuz*, No. 97-CV-2063, 2002 WL 31006171 at *9 (E.D.N.Y. Aug. 30, 2002); *Miller v. Portuondo*, 151 F. Supp. 2d 245, 249 (E.D.N.Y. 2001); *Augustine v. Walker*, No. 98-CV-0771, 2001 WL 1860883, at *9 (N.D.N.Y. Jun. 12, 2001); *Ray v. Keane*, No. 94-CV-4028, 1995 WL 129172, at *2 (E.D.N.Y. Mar. 9, 1995). The rationale of these decisions may apply with even greater force to this case as New York courts have yet to recognize a legal right to be present at a *Geraci* hearing.[3]

---

[3] On the contrary, one New York Supreme Court has ruled that a defendant has no right to be

7

For purposes of this case, the Court assumes, without deciding, that Petitioner had a cognizable right to be present at the *Geraci* hearing.

### b. Waiver of Right to Be Present

Assuming that a defendant has a legal right to be present at the *Geraci* hearing, a defendant may "expressly or effectively waive the right [to be present]." *Cohen v. Senkowski*, 290 F.3d 485, 491 (2d Cir. 2002) (internal quotation marks omitted). "A waiver of this guarantee, as the waiver of any constitutional right in a criminal proceeding, must be knowing and voluntary," and the trial court's factual findings "as to whether [petitioner] was knowingly and voluntarily absent will not be disturbed unless 'clearly erroneous.'" *Kotler*, 620 F. Supp. 2d at 383 (quoting *Polizzi v. United States*, 926 F.2d 1311, 1319 (2d Cir. 1991)). A voluntary and knowing waiver of the right to be present can be "implied from the defendant's conduct." *Clark v. Stinson*, 214 F.3d 315, 323 (2d Cir. 2000) (quoting *United States v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995)). The Second Circuit requires "only minimal knowledge" of the nature and purpose of a proceeding on the part of the accused to infer waiver from conduct. *Cohen*, 290 F.3d at 491 (quoting *Nichols*, 56 F.3d at 416). In addition, "the defendant or his counsel must object at the time of the violation or the defendant's right to be present will be deemed waived." *United States v. Jones*, 381 F.3d 114, 122 (2d Cir. 2004) (citing *Gagnon*, 470 U.S. at 529).

---

present at a *Sirois* hearing. *See People v. Perkins*, 691 N.Y.S.2d 273, 276 (N.Y. Sup. Ct. 1999). *But see People v. Turaine*, 78 N.Y.2d 871, 872 (N.Y. 1991) holding,

> The purpose of the hearing [in *People v. Turaine*] was to elicit the witness's version of the facts surrounding the alleged intimidation so that the court could determine its admissibility at trial. Defendant was entitled to confront the witness against him at that hearing and also to be present so that he could advise counsel of any errors or falsities in the witness'[s] testimony which could have an impact on guilt or innocence.

The habeas court in *Perkins* found *People v. Perkins* irreconcilable with *Turaine*. *See Perkins*, 537 F. Supp. 2d at 498.

Generally, violations of the right to be present during all critical stages of the proceeding are subject to harmless error analysis. *Yarborough v. Keane*, 101 F.3d 894, 898 (2d Cir. 1996).

i. **Express and Implied Waiver**

This Court finds that Petitioner both expressly and impliedly waived any federal constitutional right to be present at the *Geraci* hearing. First, Petitioner's counsel explicitly waived his right to be at the *Geraci* proceeding. To recap, on January 14, 2003, Osario, the seventeen-year-old eyewitness to the shooting, refused to testify at Petitioner's trial and the trial judge ordered her incarcerated and produced the next day to see if she would change her mind. At the very beginning of court proceedings on January 15, 2003, Petitioner's counsel expressly stated, "Judge, my client is produced but he's not present. I waive his appearance for the purposes of conference for right now." Tr. 338. Accordingly, Petitioner's attorney expressly waived his right to be present at the conference which was to determine whether Osario would testify and the ramifications if she did not. *Id.*

Petitioner contends that this express waiver pertained only to Osario's application for closure of the courtroom from the previous day. Pet.'s Objections 3. Nevertheless, it is clear that Osario's application for closure of the courtroom was mooted by her unequivocal refusal to testify the day earlier while Petitioner was in the courtroom. *See* Tr. 326. Instead, the purpose of the "conference for right now" was two-fold: (1) to see if Osario had changed her mind overnight, and, (2) if she had not, to conduct a *Geraci* hearing. Osario, with her mother closely behind her, stated that she would not testify under any circumstances, and the trial judge sentenced her for contempt. *Id.* at 350-54. After that, the trial judge and attorneys for both parties knew that an application for a *Geraci* hearing would follow imminently. This is evidenced by the trial judge's request that Osario's appointed counsel remain present in

9

anticipation of the district attorney's next application. *Id.* 354. The district attorney then moved for a *Geraci* hearing and Petitioner's defense counsel was prepared to object to that request on the grounds that no evidence indicated that Osario refused to testify out of fear. *Id.* at 355-57. Accordingly, the Court finds that the conference had two "purposes" – to determine whether Osario was to going to testify and, if not, to conduct a *Geraci* hearing – and that the waiver of Petitioner's presence at the conference by his defense attorney at the start of the proceeding applied to both "purposes."

Second, both Petitioner and his defense counsel failed to object to his absence from the *Geraci* hearing at any point and such inaction effectively constituted waiver of any federal constitutional right to be present. *See Jones,* 381 F.3d at 122. At no point did Petitioner's defense attorney object to the absence of his client during the *Geraci* hearing. In fact, Petitioner's defense attorney did not object when the judge twice stated that Petitioner was not entitled to be present at the *Geraci* hearing. Tr. 355, 362. In response to the trial judge's second admonition that Petitioner would not be present, Petitioner's attorney stated, "It's understood, Your Honor." *Id.* at 362. Whether or not the trial judge correctly stated Petitioner's legal right to be present under New York law at this point, the failure to object waived that right. *See United States v. Rosario,* 111 F.3d 293, 298-99 (2d Cir. 1997) (holding that defendant waived an assumed right to be present when the judge asked him to leave the robing room while she questioned a juror and neither he nor his counsel made any objection). The trial judge later refused to exclude Petitioner's defense counsel from the hearing because "if there is going to be any issue as to whether the defendant is responsible for any of the[] threats [to Osario] how . . . can [the Petitioner] respond if his attorney is precluded." Tr. 357. Again, Petitioner's defense attorney took no exception to his client's absence.

10

Moreover, on January 16, 2003, in Petitioner's presence, the trial judge recounted the evidence received during the *Geraci* hearing the prior day and announced her decision to admit Osario's grand jury testimony into evidence. Tr. 501-09. Again, neither Petitioner nor his defense attorney objected to his absence at the *Geraci* hearing. Even after a putative violation of the right to be present, a defendant still has a responsibility to object. *See Jones*, 381 F.3d at 122 (holding that a defendant could have objected *after* an alleged violation of his rights took place even if he did not know about the violation before it occurred) (citing *Gagnon*, 470 U.S. at 528-29). If Petitioner had objected on January 16, it would have been possible for the trial court to address the issue, and, if it determined that a right had been violated, take steps to attempt to cure any harm done to Petitioner from the alleged violation. Accordingly, his failure to object at any stage of the trial constitutes a waiver of his assumed right to be present at the *Geraci* hearing.

## ii. Petitioner's Knowledge of the *Geraci* Hearing

The Court also holds that Petitioner had sufficient knowledge of the proceeding to effect a valid waiver of his putative right to be present at the *Geraci* hearing. Waivers "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Plitman*, 194 F.3d 59, 63 (2d Cir. 1999) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The Second Circuit has explicitly rejected a rule that would require a defendant's personal statement in court to accomplish a constitutionally valid waiver of his right to be present. *See Polizzi*, 926 F.2d at 1322. "Although it is certainly preferable that the waiver come from the defendant directly, there is no constitutional requirement to that effect." *Id.* (citing *United States v. Crutcher*, 405 F.2d 239, 244 (2d Cir. 1968)).

11

Although the Second Circuit has not specifically delineated which rights may be relinquished by counsel and which rights must be personally waived by a defendant, the court has said that the "rights that defense counsel may waive on behalf of defendant [are those that] concern strategic and tactical matters." *Plitman*, 194 F.3d at 63. As the Supreme Court has iterated, "[w]hat suffices for waiver depends on the nature of the right at issue." *New York v. Hill*, 528 U.S. 110, 114 (2000). The Court noted the difference between (1) "certain fundamental rights," which require a defendant's personal waiver, and (2) other "decisions pertaining to the conduct of the trial," which the attorney may make and to which the defendant is deemed bound. *Id.* As examples of the first category, the Court cited the right to representation by counsel and the right to plead not guilty; for the second category, the Court cited decisions by counsel concerning what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. *See id.*

A defendant's presence at a *Geraci* hearing falls into the category of "evidentiary objections" that remains in the province of defense counsel to waive. *See id.* Indeed, the right to confront witnesses is not "in every instance" a personal right that only the defendant may waive. *Plitman*, 194 F.3d at 64. Rather, "defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound." *Id.*; *see also Brown v. Smith*, No. 06-CV-1429, 2008 WL 4922014, at *9 (S.D.N.Y. Nov. 12, 2008) (holding that counsel may waive a defendant's right to confront a prosecution witness by declining to cross-examine the witness). The record is clear that Petitioner's defense attorney expressly waived his presence at the *Geraci* hearing, and such actions may validly waive Petitioner's alleged right under these circumstances. As Judge Mann concluded, the waiver of Petitioner's presence may have been a tactical decision to prevent a

reaction harmful to his interests. *See* R & R 12 n.8. Such a tactic is sound considering that Petitioner's presence at the hearing may have compounded Osario's fears and increased the probability of the admission of her grand jury testimony.

Moreover, the Court rejects Petitioner's contention that "[a]t no time was [he] aware that a *Geraci* hearing was taking place" nor was he "informed what the purpose of a *Geraci* hearing was for." Pet.'s Objections 4. While Petitioner was not in the courtroom as the trial judge received testimony and arguments in the *Geraci* hearing, he was present at both the events leading up to the *Geraci* hearing and the conclusion of the hearing sufficient to establish his awareness of the proceeding. Tr. 323-30, 501-509. On January 14, 2003, the day before the *Geraci* hearing, Petitioner witnessed Osario's attorney claim that she was "extremely frightened" because of "matters with other witnesses." *Id.* at 323. Although Osario's attorney indicated there was no direct threat against her, Osario was concerned with "having the defendant's family present" in the courtroom. *Id.* She then refused to testify and was found to be in contempt. *Id.* at 328. Prior to this, the trial judge found that her grand jury testimony was material and given under oath. *Id.* at 325. These events, all witnessed by Petitioner, establish the likelihood of a *Geraci* hearing, which are used to determine whether grand jury testimony can be admitted where evidence suggests that "the witness's unavailability was procured by misconduct on the part of the defendant." *Geraci*, 85 N.Y.2d at 366. Thus, Petitioner knew or should have known that a *Geraci* hearing was going to occur at this point.

Furthermore, two days later, on January 16, 2003, Petitioner witnessed the trial judge describe the evidence received at the *Geraci* hearing and then issue her decision on the district attorney's application to admit Osario's grand jury testimony. Tr. 501-09. At this point, the Petitioner was fully apprised of the existence and nature of the *Geraci* hearing. Here, he had

13

ample opportunity to question and raise his absence from the proceeding, but still he made no objection. Thus, the Petitioner's defense counsel's waiver of his presence at the beginning of the hearing coupled with the Petitioner's clear knowledge of the proceeding sufficiently demonstrates the requisite "minimal knowledge" to knowingly and voluntarily waive any right to be present at the *Geraci* hearing. *See Cohen*, 290 F.3d at 491.

### c.     Knowledge of Right to Be Present

Having found that Petitioner was aware of the *Geraci* hearing, the Court next turns to Petitioner's argument that he was "not informed by the court or counsel of his right to attend the *Geraci* hearing." Pet.'s Objections 5. The Court acknowledges that it is likely that Petitioner did not know of his presumed right to be present at the *Geraci* hearing (as opposed to awareness of the hearing itself). Nevertheless, the Second Circuit has previously rejected the proposition that a component of a valid waiver is awareness of the right to be present at the proceeding. *See Cohen*, 290 F.3d at 485. In *Cohen*, it was undisputed that the petitioner was not told by his counsel of his right to attend the proceeding and the trial court never informed him of his right. *Id.* at 491. The Second Circuit held that the knowledge the petitioner "had to be aware of in order to waive his right . . . was the nature of the proceeding, not the abstract existence of the right itself." *Id.* at 493 & n.3. Thus, in this case, the fact that neither the trial judge nor Petitioner's counsel informed him of his putative right to be present at the *Geraci* hearing did not negate the valid waiver of that right.

### d.     Substantial Performance and Harmless Error

Petitioner next objects to the R & R's holding that "fundamental fairness [was not] thwarted" by Petitioner's absence from the hearing. Pet.'s Objections 18 (citing R & R 14). He argues that fundamental fairness required him to be present at the *Geraci* hearing because

14

accusations of witness tampering were being alleged against him. "Based on such [a] serious accusation," Petitioner states, "he had a constitutional right to be present and informed of such [an] uncharged accusation to defend against it." *Id.* at 19. He also challenges the R & R's assessment that any error arising from Petitioner's absence from the *Geraci* hearing would be harmless. *Id.* at 20.

For the reasons stated in the R & R, the Court disagrees. As Judge Mann found, Petitioner's counsel remained present during the course of the *Geraci* hearing. R & R 14-17. His counsel's ability to cross-examine witnesses or otherwise protect Petitioner's interests were not impaired during the *Geraci* hearing.[4]

Although Petitioner cites numerous examples of "erroneous findings" by the trial court that he could have corrected by his presence, Pet.'s Objections 20, the Court does not find that his presence could have assisted either his counsel in his defense or the judge in reaching a more "assured determination" of the facts. *See Kentucky v. Stincer*, 482 U.S. 730, 747 (1987). For example, Petitioner contends that he could have informed counsel that Osario's mother "did not testify that a telephone message was left on her beeper advising her to tell her daughter not to testify" and that "evidence did not show that the girl who approached and threatened Ms. Osario was in the company of the individual Ms. Osario did know." Pet.'s Objections 20.

Apparently, Petitioner mistakenly believes that each fact relied upon by the trial judge to reach her decision to admit the grand jury testimony derived from Osario or her mother's testimony at the *Geraci* hearing. Yet, the district attorney called two other witnesses at the hearing and entered her office's "threat assessment file" into the record which also detailed the threats against Osario and her family. Tr. 366-72, 402-03. Much of the trial court's findings

---

[4] Petitioner's claim that his attorney was "precluded from any cross-examination [and not] permitted to present any evidence to refute the prosecution's contention" is plainly groundless and rejected. Pet.'s Objections 21; R & R 14.

were based on this testimony and evidence since the court found Osario's and her mother's hearing testimony not credible. *People v. Grayton*, No. 179/02, 2003 WL 1389090, at *3 (N.Y. Sup. Ct. Feb. 5, 2003). Accordingly, Petitioner's supposed "erroneous finding[]" by the trial court was supported by the record and his challenges to these factual findings do not survive the deference granted under AEDPA. *See* 28 U.S.C. § 2254(d). The Court adopts the R & R's conclusions with respect to these issues.

### e. *Sua Sponte* Finding of Waiver

In his October 28, 2008, letter raising a supplemental objection with this Court, Petitioner argues that Judge Mann improperly reached the waiver holding *sua sponte*.[5] Petitioner contends that Respondent never argued before Judge Mann that he waived his right to be present at the *Geraci* hearing. Petitioner claims that waiver is the equivalent of an affirmative defense and that Respondent bears the burden of both pleading and proving it. Accordingly, Petitioner maintains that it was inappropriate for Judge Mann to invoke the waiver defense *sua sponte*. The Court finds this claim meritless.

First, the waiver issue was sufficiently raised in Respondent's Memorandum of Law submitted to Judge Mann. Respondent argued that the Petitioner "was present during portions of the proceedings when he had the ability to meaningfully participate" but "he remained silent." Resp't's Mem. Law 6. Respondent further maintained that "because [Petitioner] was aware of the nature of the proceedings, apprised of the testimony taken in his absence, and present for the court's decision," any rights connected with the *Geraci* hearing were not violated. *Id.* Although Respondent failed to invoke the exact term "waiver," Respondent's arguments plainly raise the

---

[5] Although Petitioner's supplemental objection is untimely, the Court elects to consider this question *de novo* and to reach the merits of this claim. *See United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 39 (2d Cir. 1997) (holding it "well within its discretion" for a district court to consider an issue within a R & R *de novo* even if not properly objected to) .

question of whether Petitioner's failure to object or interpose himself at any stage of the *Geraci* hearing waived any rights he maintained with respect to the hearing. This is especially true considering that the waiver argument was central to Respondent's argument on appeal before the New York Supreme Court, Appellate Division. *See* Resp't's Br., *People v. Grayton*, 2004 WL 3392697, at *22-25 (July 12, 2004).

Nevertheless, even if Respondent failed to raise waiver before Judge Mann, it is now appropriate for this Court to consider the issue *de novo*. In *Acosta v. Artuz*, 221 F.3d 117 (2d Cir. 2000), the Second Circuit confronted the issue of whether a district court may *sua sponte* consider a statute of limitations defense in the context of a petition for habeas corpus. The court affirmed the authority stating that such an ability is consistent with the power conferred on district courts by 2254 Habeas Rule 4. *Id.* at 123. Rule 4 gives the district court the power to review and dismiss habeas petitions prior to any responsive pleading by the state, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." 2254 Habeas Rule 4. According to the court, "[w]ith respect to Section 2254 petitions, Rule 4 'indicates that Congress intended the courts to play a more active role in § 2254 cases than they generally play in many other kinds of cases.'" *Acosta*, 221 F.3d at 123 (quoting *Hardiman v. Reynolds*, 971 F.2d 500, 504 (10th Cir. 1992)).

The Second Circuit conditioned the *sua sponte* authority of courts to consider this procedural default on courts "providing the adversely affected party with notice and an opportunity to be heard." *Id.* at 124. Here, there is no question that Petitioner had notice and an opportunity to be heard regarding the waiver issue. The R & R clearly and concisely reached the conclusion that Petitioner waived his rights with respect to the *Geraci* hearing and Petitioner responded with a voluminous, 18-page objection to that finding before this Court. *See* Pet.'s

Objections 2-20. Since the Court has considered Petitioner's arguments in reviewing the R &
R's conclusion *de novo*, he has been adequately heard with respect to this claim. Accordingly,
the general considerations for fairness or reliability when raising an issue *sua sponte* are not
applicable and the Court rejects this argument.

## II.  Admission of Osario's Grand Jury Testimony

Petitioner also challenges the R & R's conclusion that the trial judge did not commit error
in admitting Osario's grand jury testimony into evidence. "[E]xtensive federal precedent
recogniz[es] that the admission of out-of-court statements is appropriate when a defendant has
intimidated a witness." *Cotto*, 331 F.3d at 235; *see also* R & R 17-18. This Court reviews
whether Petitioner caused Osario to refrain from testifying as a question of fact, *see Smith v.
Artus*, No. 03-CV-9819, 2005 WL 1661104, at *5 (S.D.N.Y. July 14, 2005), and the trial judge's
factual findings are entitled to a "presumption of correctness" on habeas review, *Cotto*, 331 F.3d
at 233. Petitioner bears the burden of rebutting that presumption by "clear and convincing
evidence." *Id.*

Petitioner contends that "inferences did not logically flow from the evidence at the
*Geraci* hearing to establish that the unavailability of Ms. Osario was procured by [him] or by
someone acting on his behalf." Pet.'s Objections 12. On the record before the Court, Petitioner
has failed to rebut the trial judge's presumption of correctness with respect to these factual
determinations. In this case, the trial judge found, based on the testimony of the prosecution's
two witnesses and the threat assessment file entered into the record, that (1) Osario was
approached on the street by a friend of Petitioner who told her that Petitioner wanted her to visit
him at Rikers Island; (2) Osario told the police that Petitioner had a lot of friends on the street
who could hurt her or her family if asked to do so; (3) Osario's mother received a threat on her

cell phone telling her daughter "to keep her mouth shut and her head up"; (4) another threat cautioned that "if something happened to her boy[,] sh*t was going to go down"; (5) Osario admitted that she was refusing to give testimony out of fear "of something happening" to her; (6) Osario stated that she feared testifying because a friend of Petitioner had told her that they would sit in the courtroom and find out who gave testimony; (7) at the shooting incident, Petitioner gave Osario "the eye", saying "Niggers think I'm playing"; and (8) Osario likely shared the belief that Petitioner was a member of the "Blood" gang. *Grayton*, 2003 WL 1389090. Moreover, the "linchpin" that connected the threats directly to Petitioner was the message deliver to Osario to visit Petitioner at Rikers Island transmitted by an individual, whom Osario knew to be a friend of Petitioner's. *Id.* at *5. "Such suggestion for direct contact between Defendant and the witness could come only from Defendant and, in the circumstances, was clearly intended to frighten her." *Id.*[6]

Petitioner offers no credible evidence rebutting any of these findings. Instead, Petitioner challenges some of these factual findings based on the contradictory or confusing statements of Osario and her mother at the *Geraci* hearing. The trial judge did not credit the testimony of either at the *Geraci* hearing because of their fear of retaliation for attributing the threats to Petitioner. *Id.* at *3. "[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *R.C. Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Cotto*, 331 F.3d at 233 (the

---

[6] In order to establish that a defendant procured a witness's unavailability by misconduct, New York courts utilize the "clear and convincing" evidentiary standard of proof. *Geraci* 85 N.Y.2d at 362. Judge Mann applied the less stringent "preponderance of the evidence" standard to Petitioner's inquiry based on the Second Circuit's holding in *United States v. Mastrangelo*, 693 F.2d 269, 272 (2d Cir. 1982) (establishing the "preponderance of the evidence" standard to the federal equivalent of the *Geraci* hearing). The Court notes that no clearly established Supreme Court decisions bear on the standard of proof applicable to these cases. *Cotto*, 331 F.3d at 235. In any case, the Court finds that Petitioner's claim would fail under either standard.

presumption of correctness is "particularly important when reviewing the trial court's assessment of witness credibility"). Accordingly, the Court holds that the trial court's finding that Petitioner "personally and intentionally caused the witness [Osario] to be unavailable at trial," *Grayton*, 2003 WL 1389090, at *3, was not "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and, thus, the admission of Osario's grand jury testimony as evidence was not "contrary to . . . clearly established federal law." 28 U.S.C. § 2254(d).[7]

## III.    Prejudicial Statements

Finally, Petitioner attacks the R & R's determination that the state court did not act unreasonably in rejecting his challenge to the district attorney's opening statement and summation in the case. Specifically, the prosecutor stated three times in her opening statement that she "can't promise . . . that any witness . . . will come forward [to the jury] . . . ." Tr. 54-56. On summation, she reinforced these comments, reminding the jury that "I . . . told you I could not promise you how many witnesses would come forward to testify" and adding later that "other people didn't come into this courtroom, but your common sense should tell you that's not surprising to you." *Id.* at 571, 576. Petitioner's counsel objected to the summation remarks and the trial judge sustained each objection, cautioning that "[t]here is to be no speculation about

_____

[7] Petitioner also argues that he did not have an opportunity to orchestrate Osario's intimidation. Pet.'s Objections 28. The record does not support this argument. In fact, Osario told the district attorney's office that Petitioner had a lot of friends on the street who could hurt her or her family if asked to do so and that Petitioner "didn't have to actually be out to have them killed." *Grayton*, 2003 WL 1389090, at *1. Petitioner further asserts that a fact-finder could not infer from the proof presented in this case that he had a strong motive for rendering Osario unavailable to testify. Pet's Objections 28. Such an argument is specious as Osario identified Petitioner as the shooter in the crime. Procuring her unavailability would patently be to his advantage at trial. Finally, Petitioner asseverates that the admission of Osario's grand jury testimony was prejudicial and not harmless error. *Id.* at 29-33. Nevertheless, the absence of any error in introducing the grand jury testimony obviates the need to reach the issue of harmlessness.

something that wasn't presented in the trial." *Id.* Petitioner claims such statements imply that he was responsible for the failure of witnesses to appear.

Following the R & R's cogent analysis, this Court finds that the prejudice resulting from the statements, if any, was mitigated by the trial court's prompt curative actions and thus the state court's ruling was not contrary to "clearly established" law. *See Galdamez v. Keane*, 394 F.3d 68, 78 (2d Cir. 2005) (holding that a trial court judge's curative instruction to the jury alleviated any potential error).

## CONCLUSION

For the foregoing reasons, Petitioner's petition for the writ of habeas corpus is denied.

**SO ORDERED.**


Dated: Brooklyn, New York
     September  3  , 2009

SANDRA L. TOWNES
United States District Judge